1

2

3

4

5

6

7

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

8   JOHN STINCHFIELD, JR.,                    )
                                              )
9                 Petitioner,                 )          3:05-cv-0185-KJD-RAM
                                              )
10  vs.                                       )
                                              )
11                                            )          **ORDER**
    MICHAEL BUDGE, *et al.*,                  )
12                                            )
                  Respondents.                )
13  _____ /

14          This action is a petition for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254, by

15  John Stinchfield, Jr., who is represented by counsel.  Before the court is respondents' Answer

16  (docket #90) and petitioner's Reply (docket #97).

17  **A.      Procedural Status**

18          Petitioner has on file a second amended petition raising seven grounds for relief.  This

19  matter was reopened upon petitioner's motion February 9, 2009 (docket #65) and the Second

20  Amended Petition was filed on March 16, 2009 (docket #67).  Respondents moved to dismiss to

21  dismiss arguing several claims in the petition were untimely or unexhausted.  As a result of the

22  motion and the Court's review, petitioner abandoned grounds two and five of the petition.  The

23  remaining five grounds for relief are now before the Court for consideration on their merits.

24  **B.      Discussion**

25          I.      Mixed Petition

26          Preliminarily, respondents argue that the petition still contains unexhausted claims

1   and that it must be dismissed under *Rose v. Lundy,* 455 U.S. 509, 510 (1982).  Petitioner contends,

2   and the Court agrees that ground six, a claim of ineffective assistance of appellate counsel for failing

3   to include an appeal claim attacking the sufficiency of the evidence relied upon to convict petitioner

4   on the charge of attempted murder, was presented on appeal from denial of the claim on post-

5   conviction review.[1]  *See* Exhibit 73, pp. 8(j) and (k), ¶ 2, Petition for writ of habeas corpus (post-

6   conviction) and Exhibit 84, Pro Per Notice of Appeal.

7          Petitioner has fairly presented the substance of his claim of insufficient evidence to

8   the Nevada Supreme Court for its review when he filed his pro se notice of appeal of the denial of

9   his post conviction petition and the Nevada Supreme Court considered the petition on the record

10  without briefing or argument.  *See, Luna v. Cambra*  306 F.3d 954, 965 (9th Cir. 2002) as amended

11  by 311 F.3d 928 (9th Cir. 2002) . Because petitioner has abandoned the two grounds of his Second

12  Amended Petition that were unexhausted and because ground six of the petition was fairly presented

13  to the Nevada Supreme Court, the petition is not "mixed" and it shall not be dismissed on that basis.

14          II.     Legal Standard for Review of Merits

15          28 U.S.C. §2254(d), a provision of the Antiterrorism and Effective Death Penalty Act

16  (AEDPA), provides the standards of review  that this Court applies to the petition in this case:

17                  An application for a writ of habeas corpus on behalf of a
                    person in custody pursuant to the judgment of a State court shall not be
18                  granted with respect to any claim that was adjudicated on the merits in
                    State court proceedings unless the adjudication of the claim --
19
20                         (1)  resulted in a decision that was contrary to, or involved an
                    unreasonable application of, clearly established Federal law, as

21  _____

22          [1] On post-conviction review, petitioner argued his appellate counsel failed to raise constitutional
     claims including:

23                  Trial counsel was ineffective for failing to move the court for a directed verdict of
                    innocent on Count III: Attempted Murder, due to there being no evidence that shots
24                  had been fired at Stinchfield, Sr., or that petitioner had tried to kill his father, violated
                    petitioner's Sixth and Fourteenth Amendment rights to the U.S. Constitution.
25
26  Exhibit 73, pp. 8 (j)-(k).

2

determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. §2254(d).

A state court decision is contrary to clearly established Supreme Court precedent, within the meaning of 28 U.S.C. §2254, "if the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [the Supreme Court's] precedent." *Lockyer v. Andrade*, 538 U.S. 63, 123 S.Ct. 1166, 1173, 155 L.Ed.2d 144 (2003) (*quoting Williams v. Taylor*, 529 U.S. 362, 405-06, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000), and *citing Bell v. Cone*, 535 U.S. 685, 694, 122 S.Ct. 1843, 152 L.Ed.2d 914 (2002).

A state court decision is an unreasonable application of clearly established Supreme Court precedent, within the meaning of 28 U.S.C. §2254(d), "if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Lockyer v. Andrade*, 538 U.S. at 74, 123 S.Ct. at 1174 (*quoting Williams*, 529 U.S. at 413, 120 S.Ct. 1495). The "unreasonable application" clause requires the state court decision to be more than incorrect or erroneous; the state court's application of clearly established law must be objectively unreasonable. *Id.* (*quoting Williams*, 529 U.S. at 409, 120 S.Ct. 1495).

In determining whether a state court decision is contrary to federal law, this Court looks to the state courts' last reasoned decision. *See Ylst v. Nunnemaker*, 501 U.S. 797, 803-04 (1991); *Shackleford v. Hubbard*, 234 F.3d 1072, 1079 n.2 (9th Cir. 2000), *cert. denied*, 122 S.Ct. 324 (2001). With respect to pure questions of fact, "a determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner "shall have the burden of rebutting

3

the presumption of correctness by clear and convincing evidence."  28 U.S.C. §2254(e)(1). If there is no reasoned decision upon which the Court can rely, then it must make an independent review of the record to determine whether the state court clearly erred in its application of controlling federal law. *See Delgado v. Lewis,*  223 F.3d 976, 982 (9th Cir.2000).

Ground One

In ground one, petitioner claims that he "was denied his right under the Fifth, Sixth and Fourteenth Amendments to the United States Constitution to the effective assistance of counsel when counsel failed to object to (1) the Court's erroneous dismissal of the trial jury after the guilt phase and (2) sentencing of Stinchfield at the penalty hearing without the trial jury."  Second Amended Petition (docket #67).  Petitioner further argues that he is entitled to have his conviction vacated because the same jury that decided his guilt did not decide his punishment.

Under Nevada law, a criminal defendant in a first degree murder trial is entitled to have his punishment determined at a penalty hearing by the same jury that had heard the evidence of guilt.  NRS 175.552 provides in pertinent part:

> 1.  Except as otherwise provided in subsection 2, in every case in which there is a finding that a defendant is guilty or guilty but mentally ill of murder of the first degree, whether or not the death penalty is sought, the court shall conduct a separate penalty hearing. The separate penalty hearing must be conducted as follows:
>
> (a) If the finding is made by a jury, the separate penalty hearing must be conducted in the trial court before the trial jury, as soon as practicable.

NRS 175.552(1)(a).  Despite the requirements of this statute, the trial judge dismissed the jury and at a later penalty hearing imposed the maximum sentence available.

To prove ineffective assistance of counsel, petitioner must prove (1) that his attorney's actions were outside the wide range of professionally competent assistance, and (2) that counsel's actions prejudiced him. *Strickland v. Washington*, 466 U.S. 668, 687-90 (1984). Petitioner argues that the mandatory language of NRS 175.552 imposed a duty upon his counsel to

4

1   object to the court's erroneous dismissal of the trial jury before the penalty phase hearing was

2   complete, and that counsel's failure to object was deficient performance which prejudiced him in the

3   form of the sentence imposed.

4              According to respondents, petitioner's claim of ineffective assistance of counsel in

5   these circumstances  was acknowledged to be meritorious in state court post-conviction proceedings

6   on the basis that petitioner was entitled under Nevada law to have the same jury hear both the guilt

7   and penalty phases of his criminal trial.  Respondents argue that the relief afforded by the state

8   courts--a new penalty phase hearing and sentencing by a jury--renders this claim moot.

9   Alternatively, respondents argue that the claim was decided under state law and the Nevada Supreme

10  Court's affirmance was on that basis, foreclosing review of the claim by this federal court.

11             When petitioner appealed the resentencing, the Nevada Supreme Court again upheld

12  the relief given based on state law grounds.  *See* Exhibit 106.  The court said:

13             This court has previously held that "[t]he failure to properly
              sentence does not render the trial and proceedings a nullity." [fn. 3:  *State*

14            *v. District Court*, 85 Nev. 485, 488, 457 P.2d 217, 219 (1969); *see also*
              *Thomas v. State*, 120 Nev. 37, 83 P.3d 818 (2004); *Evans v. State*, 117

15            Nev. 609, 28 P.3d 498 (2001); *Hollaway v. State*, 116 Nev. 732, 6 P.3d
              987 (2000) (In *Thomas*, *Evans*, and *Hollaway*, we remanded for a new

16            penalty hearing because the error only occurred during the penalty phase
              and not the guilt phase of the trial).] "When an improper sentence is the

17            sole basis of the complaint no vacation of conviction or adjudication is
              necessary since justice may be done by correction of the sentence." [fn. 4:

18            *District Court*, 85 Nev. at 488, 457 P.2d at 219.] Although NRS
              175.552(1)(a) provides that a separate penalty hearing must be conducted

19            before the trial jury, Stinchfield has failed to point to any authority
              supporting his proposition that a new guilt phase proceeding is warranted

20            when an error only affects the penalty phase.  The district court correctly
              determined that the proper remedy was a new sentencing hearing before a

21            newly empanelled [sic] jury.  Counsel's failure to object to the district
              court's release of the jury did not affect the jury's finding of guilt or render

22            the trial proceedings a nullity.  Accordingly Stinchfield's claim that he is
              entitled to a new trial lacks merit.

23

24  Order of Affirmance, Exhibit 106, pp. 2-3.

25             An error of state law such as occurred here does not equate to a denial of due process.

26

5

*Gryger v. Burke,* 334 U.S. 728, 731 (U.S. 1948).  A due process violation occurs only when the state law error is so prejudicial that it renders the defendant's trial fundamentally unfair. *Moore v. Borg* 911 F.2d 738 (9th Cir. 1990),  *Colley v. Sumner*, 784 F.2d 984, 990 (9th Cir.), cert. denied, 479 U.S. 839 (1986); *Hines v. Enomoto*, 658 F.2d 667, 672 (9th Cir.1981). Unfair prejudice exists when there is a substantial possibility of wrongful conviction. *See Cassasa v. Nelson*, 452 F.2d 1083, 1084 (9th Cir.1971) (per curiam); accord *Britton v. Rogers*, 631 F.2d 572, 575-76 (5th Cir.1980) (for due process violation, must show gross and conspicuous prejudice), cert. denied, 451 U.S. 939 (1981).

        Petitioner has failed to demonstrate that he received a fundamentally unfair trial or that his sentencing before a different jury resulted in gross and conspicuous prejudice.   In fact, the transcript of the resentencing hearing demonstrates that the new jury was presented with the evidence and much of the testimony presented at the original trial. *See,* Exhibits 97 and 98.  The State presented many of the same witnesses who appeared at the trial and the testimony of witnesses who were not available at the resentencing was read into the record . *Id.*  Thus, the resentencing jury was aware of the evidence against petitioner and the jurors could, to the greatest extent, judge the weight and credibility of the evidence for themselves in determining an appropriate penalty.   Petitioner has failed to demonstrate that the state court's decision on this claim was an erroneous or objectively unreasonable application of clearly established federal law.  In fact, he cannot demonstrate that the state court's determination was based on federal law in any regard.  No relief is warranted on ground one of the Second Amended Petition.

        Ground Three[2]

        In ground three, petitioner alleges he was denied his right to the effective assistance of counsel when counsel did not seek sanctions for the state's failure to ascertain his blood alcohol level at the time of his arrest.  Specifically, petitioner contends that because he and his father had been indulging in a two-day drinking binge prior to the events leading to his conviction, the police

---

        [2] As noted above, petitioner voluntarily abandoned grounds two and five of his petition.

1    who arrested him should have obtained his blood alcohol levels as soon as he was arrested and that

2    information should have been made available to the defense.  He argues that failure to do so

3    prevented him from presenting evidence to support a voluntary intoxication defense and from

4    prevailing on his motion to exclude from evidence his confessions to police as involuntary,

5    unknowing, and unintelligently made.

6            Nevada law provides that the investigating officers' failure to obtain evidence that is

7    material, i.e. having a reasonable probability of changing the result of the proceeding, *United States*

8    *v. Bagley,* 473 U.S. 667 (1985), due to negligence, gross negligence, or a bad faith attempt to

9    prejudice the defendant's case, may result in sanctions against the state.  *Daniels v. State,* 114 Nev.

10   261 , 267, 956 P.2d 111, 115 (1998).  The *Daniels* court, adopting a New Mexico court test,

11   concluded that the appropriate sanction depended upon the level of culpability of the investigator.

12   *Id.*  Negligence would afford the defendant the opportunity to "examine the prosecution's witnesses

13   about the investigative deficiencies," gross negligence allowed the defense to a presumption that the

14   evidence would have been unfavorable to the state and bad faith, if egregious, could allow for the

15   dismissal of the charges.  *Id.*, citing *State v. Ware,* 118 N.M. 319, 881 P.2d 679 (1994).

16           In addressing this claim, the Nevada Supreme Court applied *Strickland* and

17   determined that petitioner had failed to establish prejudice arising from counsel's performance.

18   Exhibit 85, p. 3.  The court noted that petitioner had failed to show his statement was involuntary

19   due to intoxication where the investigating officer testified that petitioner " 'was talking straight' and

20   did not appear intoxicated" during the interviews.  *Id.*  The Nevada Supreme Court also concluded

21   that petitioner had not shown that  "evidence of his blood alcohol level would have altered the

22   outcome of his trial."  *Id.*   The court also noted that defense counsel questioned "several of the

23   state's witnesses about the failure to determine Stinchfield's blood alcohol level," the potential

24   remedy of negligent failure to obtain and preserve exculpatory evidence. *Id.*

25           Petitioner has not persuaded this Court that the Nevada Supreme Court's treatment of

26

7

1    this claim was improper under 28 U.S.C. § 2254.

2         Ground Four

3         In this ground for habeas relief, petitioner argues that he was denied his rights to due

4    process and a fair trial guaranteed by the Fifth and Fourteenth Amendments when the trial court

5    allowed his involuntary confessions to be entered into evidence at trial.

6         A confession is voluntary if it is the " 'product of a rational intellect and a free will.' "

7    *Medeiros v. Shimoda*, 889 F.2d 819, 823 (9th Cir.1989) (quoting *Townsend v. Sain*, 372 U.S. 293,

8    307 (1963)), *cert*. denied, 496 U.S. 938 (1990). A confession is involuntary when " 'under the

9    totality of circumstances, the government obtained the confession by coercion or improper

10   inducement.' " *United States v. Turner*, 926 F.2d 883, 888 (9th Cir.) (quoting *United States v. Pinion*,

11   800 F.2d 976, 980 (9th Cir.1986), *cert.* denied, 480 U.S. 936 (1987)), *cert.* denied, 502 U.S. 830

12   (1991). The crucial question is whether the defendant's will was overborne when he confessed.

13   *United States v. Miller*, 984 F.2d 1028, 1031 (9th Cir.), *cert.* denied, 510 U.S. 894 (1993).

14        To support his claim, petitioner presents a time-line of events from the point of his

15   arrest and initial interview with Sgt. Arndell at approximately 12:30 a.m. until his second interview

16   with police at the Lyon County Jail some twelve hours later at 12 noon.  He reports his initial

17   confinement was in a "holding cell in the booking area where there [was] a significant amount of

18   activity and noise" where, after some seven hours of detention "a disruption occurred and Stinchfield

19   was strapped into a restraint chair wearing only his underwear."  Second Amended Petition, p. 17.

20   Petitioner further reports that soon after being placed in the restraint chair, he requested to speak

21   with the investigating officer again.  When petitioner met with Sgt. Arndell the second time, he

22   confessed to the two killings.

23        The Nevada Supreme Court considered and rejected this claim for relief finding the

24   trial court's admission of the confessions was based on substantial evidence that the statements made

25   to Sgt. Arndell were voluntary.  Exhibit 65, pp. 2-4.  The court considered the petitioner's age, and

26

8

1   intellect, the length and conditions of his detention, the length of the interviews, as well as the

2   apparent fact that he was not punished, deprived of food or water or sleep prior to or during the

3   interviews.  *Id.*

4          This Court concurs with that conclusion based upon the evidence presented at trial.

5   Petitioner's argument that the fact that all but one of the persons involved in the incident was

6   extremely intoxicated at the time it occurred does not persuade this Court that statements made to

7   police several hours later were made while petitioner was grossly intoxicated or after having had his

8   will overborne by his uncomfortable surroundings.   Thus, the state court's findings of fact were not

9   unreasonable.  In addition, the state court's application of the law to the facts was not contrary to or

10  an unreasonable application of clearly established federal law.  Petitioner is not entitled to relief on

11  ground four of the Second Amended Petition.

12         <u>Ground Six</u>

13         In ground six, petitioner claims that he was denied the effective assistance of

14  appellate counsel, who failed to raise on direct appeal the claim that the state presented insufficient

15  evidence to convict him on the charge that he attempted to murder his father.

16         Claims of ineffective assistance of appellate counsel are reviewed according to

17  *Strickland's* two-pronged test. Smith v. *Miller v. Keeney*, 882 F.2d 1428, 1433 (9th Cir.1989)*;*

18  *United States v. Birtle*, 792 F.2d 846, 847 (9th Cir.1986); *See, also, Smith v. Murray,* 477 U.S. 527

19  (1986).  Thus, petitioner must show that his appellate counsel's performance was objectively

20  unreasonable in failing to identify and present the claim and that there was a reasonable probability

21  that, but for counsel's unreasonable failure, he would have prevailed on his appeal. *Smith v.*

22  *Robbins,* 528 U.S. 259, 285 (2000).

23         Petitioner points out that at trial his father, Stinchfield, Sr., testified that he heard a

24  shot when he was leaning over George Robles who had been shot and that he believed [the shot]

25  went past his head.  Stinchfield, Sr. testified he did not know if the shot would have hit him had he

26

9

1     remained upright, and on cross-examination, he testified that he did not believe that the shots were

2     fired at him because there were no holes in the van. *See* Exhibit 46, pp. 386-390. Respondents and

3     the Nevada Supreme Court point to contradictory testimony offered at trial.

4            Under the standard imparted in *Jackson v. Virginia,* 443 U.S. 307, 318-319 (1979), a

5     question of whether evidence was sufficient to convict a defendant requires viewing the evidence in

6     the light most favorable to the prosecution and determining whether any rational trier of fact could

7     have found the essential elements of the crime beyond a reasonable doubt. The *Jackson* standard

8     "must be applied with explicit reference to the substantive elements of the criminal offense as

9     defined by state law." *Jackson*, 443 U.S. at 324 n. 16. Moreover, contradictory evidence must be

10    assumed to be resolved by the jury in favor of the prosecution. *Id.* at 326.

11           The Nevada Supreme Court's review of the claim found there to be sufficient

12    evidence to convict. Exhibit 85, p. 7. This Court concurs. Stinchfield, Sr.'s testimony that he did

13    not know if the shots were intended for him or that they must not have been was contradicted by his

14    statements made to other witnesses. *See e.g.,* Exhibit 46, p. 250; Exhibit 98, p. 271.

15           Petitioner has not demonstrated that he is entitled to relief on ground six of the second

16    amended petition under the provisions of 28 U.S.C. § 2254. This ground shall be denied.

17         <u>Ground Seven</u>

18           In ground seven, petitioner claims "[t]he trial court's error in releasing the trial jury

19    before it could determine Stinchfield's sentence at a penalty hearing as prescribed by Nev. Rev. Stat.

20    § 175.552(1)(a) denied him his constitutional right to due process of law, freedom from double

21    jeopardy and trial by jury as protected by the Fifth, Sixth and Fourteenth Amendments to the United

22    States Constitution." Second Amended Petition, p. 20.

23         *Due Process*

24           As discussed under ground one, petitioner has not demonstrated that the error in his

25    original sentencing proceedings and the relief afforded to ameliorate that error resulted in a due

26

1    process violation.  He has not shown that the trial or the resentencing was fundamentally unfair,

2    particularly where the resentencing hearing included much of the testimony and evidence presented

3    to the original jury at trial.  *See* Exhibits 98 and 99.  The new jury heard and reviewed the evidence

4    of petitioner's guilt, even if it was not charged with determining guilt itself.

5            *Double Jeopardy*

6            Petitioner asserts his right "to have his trial completed by the particular jury

7    summoned to hear his case" and claims that the premature discharge of the trial jury requires the

8    criminal charges to be dismissed on double jeopardy grounds.  Petitioner presented this claim on

9    appeal form his resentencing.  The Nevada Supreme Court denied relief stating:

10           The Double Jeopardy Clause has been interpreted to protect a
     criminal defendant from three main abuses - "a subsequent
11           prosecution following a conviction on the charges, a subsequent
     prosecution following an acquittal, and multiple punishments for the
12           same offense in a single trial. [fn. 5: *Garcia v. State,* 121 Nev. 327,
     342, 113 P.3d 836, 845 (2005), *modified on other grounds by*
13           *Mendoza v. State,* 122 Nev. 267, 274, 130 P.3d 176, 180 (2006).]
     When the court declares a mistrial and the defendant is retried, he
14           loses his "valued right to have his trial completed by a particular
     tribunal." [fn. 6: *U.S. v. DiFrancesco,* 449 U.S. 117 (1980) (quoting
15           *Arizona v. Washington,* 434 U.S. 497, 503 (1978)).] However, when
     a case is completed in front of a jury and then is appealed, a reversal
16           on appeal does not preclude the State from retrying a defendant.
     This court has held that retrial after reversal, except in cases where
17           the reversal was for insufficient evidence, does not offend double
     jeopardy principles. [fn. 7: *State v. Purcell,* 110 Nev. 1389, 1395,
18           887 P.2d 276, 279 (1994); *State v. Walker,* 109 Nev. 683, 857 P.2d
     1, 203 (1993).]

19
             Double jeopardy has been extended to penalty hearings in
20           limited circumstances.  For example, if a defendant has been
     acquitted of the death penalty he cannot then be re-sentenced to
21           death on remand. [fn. 8: *Collier v. State,* 103 Nev. 563, 565, 747
     P.2d 225, 226 (1987).] Double jeopardy also prohibits a sentencing
22           court from increasing a lawful sentence on a count after this court
     has vacated an unlawful sentence on another count. [fn.9: *Wilson v.*
23           *State,* 123 Nev. ___, ___, 170 P.3d 975, 979 (2007).]

24           Stinchfield's case does not fall within the three abuses that
     double jeopardy protects against.  Stinchfield was not prosecuted
25           again after a conviction or acquittal, and he was not punished twice
     for the same crime.  In addition, the district court's release of the trial

26

                                            11

1
2
3
4

> jury prior to sentencing was not akin to a mistrial because the guilt phase of the trial was completed.  Moreover, this case does not fall within the limited circumstances to which double jeopardy has been extended to the penalty phase.  Stinchfield was not "acquitted" of a particular sentence, nor was he more harshly punished at the second penalty hearing after the sentence was vacated.  Accordingly, the district court did not violate double jeopardy.

5    Exhibit 106, pp. 4-5.

6         The Double Jeopardy Clause of the Fifth Amendment protects a criminal defendant

7    from repeated prosecutions for the same offense. *United States v. Dinitz*, 424 U.S. 600, 606 (1976).

8    As a part of this protection against multiple prosecutions, the Double Jeopardy Clause affords a

9    criminal defendant a "valued right to have his trial completed by a  particular tribunal." *Wade v.*

10   *Hunter*, 336 U.S. 684, 689  (1949).   As the Nevada Supreme Court declared, double jeopardy

11   protects against a second prosecution for the same offense after acquittal, against a second

12   prosecution for the same offense after conviction, and against multiple punishments for the same

13   offense.  *U.S. v. DiFrancesco,* 449 U.S. 117, 129.  None of these circumstances are present in

14   petitioner's case.  The decision of the Nevada Supreme Court was correct and petitioner is not

15   entitled to relief on ground seven of his petition.

16        Petitioner has not demonstrated that the state courts' handling of the claims raised in

17   the second amended petition was objectively unreasonable or contrary to clearly established federal

18   law.  The petition shall be denied.

19   **C.    Certificate of Appealability**

20        In order to proceed with his appeal, petitioner must receive a certificate of

21   appealability.  28 U.S.C. § 2253(c)(1); Fed. R. App. P. 22; 9th Cir. R. 22-1;  *Allen v. Ornoski,* 435

22   F.3d 946, 950-951 (9th Cir. 2006); s*ee also United States v. Mikels*, 236 F.3d 550, 551-52 (9th Cir.

23   2001).  Generally, a petitioner must make "a substantial showing of the denial of a constitutional

24   right" to warrant a certificate of appealability.  *Id.;* 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529

25   U.S. 473, 483-84 (2000).  "The petitioner must demonstrate that reasonable jurists would find the

26

1  district court's assessment of the constitutional claims debatable or wrong." *Id.* (*quoting Slack*, 529

2  U.S. at 484).  In order to meet this threshold inquiry, the petitioner has the burden of demonstrating

3  that the issues are debatable among jurists of reason; that a court could resolve the issues differently;

4  or that the questions are adequate to deserve encouragement to proceed further. *Id.*

5          Pursuant to the December 1, 2009 amendment to Rule 11 of the Rules Governing

6  Section 2254 and 2255 Cases, district courts are required to rule on the certificate of appealability in

7  the order disposing of a proceeding adversely to the petitioner or movant, rather than waiting for a

8  notice of appeal and request for certificate of appealability to be filed.  Rule 11(a).  This Court has

9  considered the issues raised by petitioner, with respect to whether they satisfy the standard for

10 issuance of a certificate of appealability, and determines that none meet that standard.  The Court

11 will therefore deny petitioner a certificate of appealability.

12          **IT IS THEREFORE ORDERED** that the Second Amended Petition is **DENIED.**

13          **IT IS FURTHER ORDERED** that no Certificate of Appealability shall issue in this

14 matter.  The Clerk shall enter judgment accordingly.

15          DATED:  December 13, 2010

16

17

18  _____

19          UNITED STATES DISTRICT JUDGE

20

21

22

23

24

25

26

13